UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------ X
                                                        :
CHIN TUAN,                                              :
                                                        :
                                    Plaintiff,          :        19 Civ. 4264 (LGS)
                                                        :
              -against-                                 :     OPINION AND ORDER
                                                        :
FLATRATE MOVING NETWORK LLC,                            :
                                                        :
                                    Defendant.          :
                                                        :
------------------------------------------------------ X
```

LORNA G. SCHOFIELD, District Judge:

Pro se Plaintiff Chin Tuan brings this action under Title VII of the Civil Rights Act of 1964, alleging discrimination, a hostile work environment and retaliation. As Plaintiff is pro se, the Court liberally construes Plaintiff's Second Amended Complaint as also bringing claims under the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL") and New York Labor Law § 198-c(1).[1] Defendant moves to dismiss the Title VII claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is granted as to Plaintiff's federal claims, and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

---

[1] Although not explicitly alleged in the Complaint, Plaintiff asserts in his opposition memorandum that he lives in Queens, and asserted in a letter to the Court that Defendant's primary business is in the Bronx, New York. Accordingly, the Court construes Plaintiff's claims to plead discrimination within New York City under the NYCHRL and to plead a violation of New York Labor Law § 198-c(1) for the alleged failure to pay accrued vacation time. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 157 (2d Cir. 2017) (finding the district court was required to construe pro se plaintiff's complaint alleging violations of Title VII to also include claims under the NYSHRL and NYCHRL based on the "factual allegations alone" where the "allegations clearly suggest claims under the NYSHRL and NYCHRL").

I.      BACKGROUND

The following facts are taken from the Second Amended Complaint and Plaintiff's opposition memorandum (together, the "Complaint").  *See Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y. 2014) ("Where new allegations in a pro se plaintiff's opposition memoranda are consistent with the allegations contained in the Complaint, they may be read as supplements to the pleadings." (collecting cases) (alterations and quotations omitted)); *accord Komatsu v. City of New York*, No. 18 Civ. 3698, 2019 WL 4805904, at *1 (S.D.N.Y. Sept. 30, 2019).  The allegations are accepted as true and construed in the light most favorable to Plaintiff. *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 725 (2d Cir. 2017).

A.      2013-2014 Employment Period

Plaintiff is an Asian American man.  He was employed by Defendant from around July 2013 to September 2014.  Plaintiff alleges discrimination based on Defendant's conduct in connection with that employment.  Defendant also failed to pay Plaintiff vacation pay accrued when he was employed in 2013 and 2014.

B.      2017 Employment Period

On June 1, 2017, Plaintiff again applied for employment with Defendant as a Mover and Driver.  The application included a multiple-choice question asking for the applicant's race and/or ethnicity, which did not provide "Asian" as an answer option.  Plaintiff raised his concern regarding the absence of that option to Defendant's Human Resources representative, who suggested that Plaintiff select the "mixed" option.  At that time, Plaintiff requested that the question be changed.  Plaintiff made the same request of the Operations Manager who interviewed Plaintiff.  Plaintiff "felt forced to answer and took it upon himself to write the word 'Asian' in caps across the face of the page."

2

Plaintiff began work on June 11, 2017 and resigned on June 20, 2017 after working eight days.  The Complaint alleges that, during these eight days, Plaintiff was assigned to three driving roles, and a handful of other roles as a Helper, a Second[2] and an "extra."  The Complaint describes this period as "[eight] horrendous days of [six] completely different positionings with no advanced notice of any sort."[3]  The Complaint alleges that Plaintiff was assigned jobs for which employees do not receive tips -- he was assigned to load at a storage facility for part of his second day, and was assigned to do box delivery on his seventh day.  The Complaint also alleges that he was assigned jobs for which employees typically receive lower tips -- Plaintiff was assigned to offloading jobs on his third day and part of his fourth day.  In contrast, Foreman Daniel returned to employment with Defendant at "the same time more or less" as Plaintiff, to "work the same position as [P]laintiff" and "may or may not be a driver."  Foreman Daniel, who is not Asian American, was assigned more hours, resulting in more overtime pay, and was placed on larger jobs with higher commission and tips than Plaintiff.

Plaintiff was the only person of Asian descent working for Defendant during this period in 2017.  During this time, "some of Plaintiff's colleagues referred to him as 'Chino,' which

---

[2] From the context of the Complaint, the Court understands a "Second" to be the second-in-command under a Foreman.

[3] During Plaintiff's first three days on the job, he was assigned to the team of a senior Foreman, and worked a total of thirty-four hours on two moves, a long-distance contract, loading up jobs for another day and offloading.  On the fourth day, Plaintiff was removed from that Foreman's team, but worked a total of seventeen hours, including on two offloading jobs and overtime upon request in a "peak position."  The Complaint does not allege hours worked on the fifth day, although it does allege that Plaintiff worked as a Foreman Driver on a move "which included and was not limited to a bed frame."  On the sixth day, Plaintiff worked fifteen hours on a contract that required an additional truck.  The Complaint alleges Plaintiff was denied overtime on the seventh day, when it appears Plaintiff worked five hours on box delivery.  Plaintiff was also initially scheduled for work the next day, but then was told the job was canceled.  The Complaint does not allege the number of hours worked on the eighth day of work, on which Plaintiff resigned, and on which Plaintiff was assigned to a team moving boxes into storage.

Plaintiff understands to mean 'Chinese person,'" and "some of Plaintiff's colleagues and supervisors, including members of the Planning Division,[4] spoke his name, Chin, in what Plaintiff took to be a sarcastic tone."  When Plaintiff called in daily, as required, "there was always a sarcastic and belittling tone in reference to his name on the receiving end."

The Complaint alleges (1) that non-Asian workers were assigned to more lucrative contracts likely to generate higher tips; (2) that Plaintiff was not notified in advance of the positions or teams to which he would be assigned; therefore he "was not equipped with his own tools as every Foreman should have, but rather had to scramble for essentials, appearing unprofessional," while "other Forem[e]n, all of whom were not of Asian descent, were afforded the proper tools and equipment to carry out their responsibilities"; and (3) that "non-Asian [F]oremen were assigned seconds with better reputations who performed their jobs better."

Finally, Plaintiff made inquiries about his 2013-2014 accrued vacation pay with Defendant's Human Resources department on August 23, 2017, but he did not receive a response.  Plaintiff then filed claims with the New York City Commission on Human Rights and the Equal Employment Opportunity Commission ("EEOC").  The EEOC issued him a right to sue letter on February 12, 2019.  He timely brought this lawsuit less than ninety days later.

## II.    STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

---

[4] From the context of the Complaint, the Court understands the Planning Department as handling the assignment of employees to moving contracts.

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 554). On a Rule 12(b)(6) motion, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016) (internal quotation marks omitted).

Courts must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (internal quotation marks omitted). "We afford a pro se litigant 'special solicitude' by interpreting a complaint filed pro se 'to raise the strongest claims that it suggests.'" *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018).

## III.   DISCUSSION

Plaintiff brings three claims under Title VII: discrimination, hostile work environment and retaliation. For the following reasons, these claims are dismissed.

### A.   Defendant's 2013 and 2014 Conduct

The claims arising from Plaintiff's employment during 2013 and 2014 are time barred and are dismissed. "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015); *accord Ferrarini v. Irgit*, No. 19 Civ. 0096, 2020 WL 122987, at *2

(S.D.N.Y. Jan. 9, 2020).  Title VII requires a plaintiff to file a claim with the EEOC within at

most 300 days of an alleged adverse action.  *See* 42 U.S.C. § 2000e–5(e)(1).  "It has long been

settled that a claim of employment discrimination accrues for statute of limitations purposes on

the date the employee learns of the employer's discriminatory conduct."  *Alleyne v. Am. Airlines,*

*Inc.*, 548 F.3d 219, 222 (2d Cir. 2008) (quoting *Flaherty v. Metromail Corp.*, 235 F.3d 133, 137

(2d Cir. 2000)); *accord Saber v. New York State Dep't of Fin. Servs.*, No. 15 Civ. 5944, 2017

WL 985889, at *6 (S.D.N.Y. Mar. 10, 2017).

　　　　According to the Complaint, Plaintiff filed his complaint with the EEOC no earlier than

in or about August 2017, and likely filed it in 2018.  The Complaint alleges that after Plaintiff's

visit to Defendant's premises on or about August 2017, "Plaintiff then approached the [NYC]

Commission of Human Rights ["NYCHR"] to file a discrimination lawsuit.  After EEOC issued

him a right to sue letter, Plaintiff filed this case."  According to the NYCHR Notice of

Administrative Closure, and the EEOC right to sue letter, the NYCHR Complaint Number and

the EEOC "Federal Charge Number" for Plaintiff's claims are both a 2018 file number,

presumably indicating that the claims were filed in 2018.  Both documents are integral to the

Complaint and the latter was attached to the initial form complaint and therefore can be

considered on this motion.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.

2002) ("[O]n a motion to dismiss, a court may consider documents attached to the complaint as

an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or

documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in

bringing suit." (quotation marks and alterations omitted)).  Even without considering these

documents and based solely on the Complaint, Plaintiff filed the EEOC complaint no earlier than

2017.  Thus the claims arising from Plaintiff's employment during 2013 and 2014 are time barred because they accrued more than 300 days before the filing of the EEOC complaint.

### B.    Defendant's 2017 Conduct

#### 1.   Title VII Discrimination Claim

With regard to Defendant's 2017 conduct, the Title VII discrimination claim is dismissed because the Complaint does not plead that Defendant subjected Plaintiff to actionable adverse employment actions.  Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  At the pleading stage, Title VII "requires a plaintiff asserting a discrimination claim to allege two elements: (1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015).  Because the Complaint does not sufficiently plead the first element, this Opinion does not discuss the second element.

"As to the first element, an employer discriminates against a plaintiff by taking an adverse employment action against him."  *Id.*

> A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment.  An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities.  Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or . . . assignment of a disproportionately heavy workload . . . .

*Id.* (internal quotation marks and citations omitted).

For the 2017 period, the Complaint broadly alleges that Plaintiff was denied overtime hours and given assignments that were less lucrative due to lower or no commission or tips.

Consistently assigning an individual solely to jobs where he would receive lower or no tips may constitute an adverse employment action. *See, e.g., Rowe v. Jagdamba, Inc.*, 302 F. App'x 59, 62 (2d Cir. 2008) (summary order) ("We assume, without here deciding, that [in] . . . a profession where wage is determined almost solely by tips, the consistent decision to place the plaintiff in a section with fewer customers than anywhere else could amount to a decreased wage, and, if combined with other disadvantages, could rise to the level of an adverse employment action." (quotation marks and alterations omitted)). Similarly, ongoing denial of overtime work may constitute an adverse employment action. *See, e.g.*, *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 406 (S.D.N.Y. 2014) ("Courts in this Circuit have found that the denial of overtime, where accompanied by a loss in compensation or other material harm, may constitute an adverse employment action.").

But a review of the specific allegations in the Complaint as to Plaintiff's assignments and hours during the eight days he worked shows that any denial of overtime or lucrative assignments was sporadic rather than consistent and therefore does not constitute an adverse employment action. *See DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 151–52 (2d Cir. 2014) ("Although factual allegations of a complaint are normally accepted as true on a motion to dismiss, that principle does not apply to general allegations that are contradicted by more specific allegations in the Complaint." (internal quotation marks and citation omitted)). The Complaint alleges that, during the eight days of employment, Plaintiff was denied overtime once but that he also requested and received six hours of overtime in a "peak position" in another instance. The Complaint alleges that Plaintiff was assigned to a variety of different positions and jobs, some but not all of which are alleged to have involved lower or no tips, including jobs on his second, third, fourth and seventh days when Plaintiff was

assigned to load at a storage facility, to box delivery, and to offloading jobs.  The Complaint also

alleges (in Plaintiff's opposition memorandum which is deemed to be part of the Complaint) that

he had "requested" positions "as a third or fourth, in other words a helper" "as he float[ed] his

way into a foreman position," and that his request was for the most part granted: Plaintiff was

assigned as a Second on his second and fourth days, a Foreman Driver on his fifth day and a

helper on his sixth and eighth days.  In the circumstances of this case where Plaintiff worked

only eight days in a ten-day period, these allegations of sporadic assignments to less lucrative

jobs and positions and a single denial of overtime are insufficient to find "a materially adverse

change in the terms and conditions of employment."  *See Rowe*, 302 F. App'x at 62 ("Rowe

alleges isolated incidents of adverse treatment in scheduling and table assignments, and resulting

loss of tips and wages, but his allegations do not rise to the level of a 'materially adverse change

in the terms and conditions' of his employment."); *Shukla v. Deloitte Consulting LLP*, No. 19

Civ. 10578, 2020 WL 3181785, at *6 (S.D.N.Y. June 15, 2020) (observing that assignments to

certain job duties or work assignments "typically do not rise to the level of an adverse

employment action, unless such [assignments are] . . . so significant as to constitute a setback to

the plaintiff's career." (quotation marks omitted)).

The Complaint also includes allegations that Plaintiff was not assigned to his requested

teams or teammates, was not informed in advance of his job assignments, was given inconsistent

job assignments, some of his co-workers called him "Chino" or spoke his name in a sarcastic

tone and the job application form requesting the applicant's race did not include "Asian" as a

possible answer.  None of this alleged conduct constitutes an adverse employment action because

the conduct did not cause "materially adverse change in the terms and conditions of

employment."  *Vega*, 801 F.3d at 85; *see La Grande v. DeCrescente Distrib. Co., Inc.*, 370 F.

App'x 206, 211 (2d Cir. 2010) (summary order) ("Everyday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions within the meaning of Title VII."); *see also Sealy v. State Univ. of New York At Stony Brook*, 408 F. Supp. 3d 218, 226 (E.D.N.Y. 2019) (dismissing Title VII discrimination claim based on allegations that, *inter alia*, defendant transferred plaintiff to a more remote work location; denied plaintiff a key to supply room; required Plaintiff to wait 45 minutes to access the supply room; assigned plaintiff a vehicle that was frequently in the shop; and denied plaintiff new tools to be insufficient to allege adverse employment action); *Davis v. NYS Dep't of Corr. Attica Corr. Facility P.O. Box 149 Attica, N.Y. 14011*, 46 F. Supp. 3d 226, 236 (W.D.N.Y. 2014) ("Whispering, gossiping, and making negative comments about an employee also do not rise to the level of an adverse employment action because they do not materially change the terms and conditions of employment."); *Cramer v. Fedco Auto. Components Co.*, No. 01 Civ. 0757, 2005 WL 839671, at *11 (W.D.N.Y. Apr. 12, 2005) (finding allegedly unfair treatment and sarcastic comment not to constitute adverse employment action because "[s]uch minor inconveniences, absent some other negative result, are not, as a matter of law, adverse employment actions."); *cf. Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("Title VII, we have said, does not set forth a general civility code for the American workplace." (internal quotation marks omitted)).

Plaintiff's Title VII discrimination claim based on the 2017 employment period is dismissed. [5]

---

[5] Broadly construed, Plaintiff also alleges constructive termination. *See Green v. Brennan*, 136 S. Ct. 1769, 1776 (2016) ("The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." (internal quotation marks omitted)). To allege a claim of constructive discharge, a plaintiff must allege that "he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign" and "that he actually resigned." *Id.* at 1777. Because Plaintiff's hostile work environment claim is found to

### 2. Title VII Retaliation Claim

The Title VII retaliation claim is dismissed because the Complaint does not allege that Plaintiff opposed an employment practice that is unlawful under Title VII.  An employer may not discriminate against an employee because the employee "opposed any practice made an unlawful employment practice" by Title VII.  42 U.S.C. § 2000e-3(a); *see Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014).  To state a claim for retaliation under Title VII "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) because he has opposed any unlawful employment practice."  *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018).

The Complaint alleges that Defendant retaliated against Plaintiff in response to his having complained to Human Resources about Defendant's employment application, which did not provide the option of answering "Asian" for his ethnic group.  But omitting "Asian" as an option in a demographic question in an employment application is not an unlawful employment practice under Title VII, nor is asking for information on an applicant's ethnicity or race.  *See* 42 U.S.C. § 2000e–2(a)(1).  Rather, it is illegal for an employer to make hiring decisions based on race.  *See id*. (It unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of such individual's race,* color, religion, sex,

---

be insufficiently pleaded, Plaintiff's constructive discharge claim must also fail.  *See McGrath v. Arroyo*, No. 17 Civ. 1461, 2019 WL 3754459, at *9 (E.D.N.Y. Aug. 8, 2019) ("The bar for constructive discharge claims under Title VII is higher than that for hostile work environment claims, so pleadings that fail to pass muster under the less rigorous standard of a hostile work environment must also be found inadequate under the more demanding one.  Therefore, a court's dismissal of a plaintiff's hostile work environment claim necessitates the dismissal of a plaintiff's constructive discharge claim. (citation, quotation marks and alterations omitted)); *Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 262 (S.D.N.Y. 2014) (same).

or national origin" (emphasis added)).  Here Plaintiff wrote in "Asian" in capital letters across the face of the page.  Defendant then hired him.  Because the Complaint does not allege that Plaintiff opposed an unlawful employment practice, the retaliation claim is dismissed.  *See, e.g.*, *Martin v. City Univ. of New York*, No. 17 Civ. 6791, 2018 WL 6510805, at \*11 (S.D.N.Y. Dec. 11, 2018).

Although not the basis for the retaliation claim, the Complaint also alleges that Plaintiff on his seventh day expressed concern about his job assignments, and then complained about discrimination on his eighth day of employment when he resigned, as well as a few days later. Although these actions may constitute protected activity, they cannot be the basis for a retaliation claim because the Complaint does not "plausibly plead a connection between the [adverse retaliatory] act and his engagement in protected activity."  *Vega*, 801 F.3d at 90.  The allegedly retaliatory conduct -- the undesirable job assignments -- preceded the protected activity.  The Complaint alleges no change in treatment following the complaints of discrimination.

The Complaint also alleges that, in August 2017 after he resigned, Plaintiff made inquiries about compensation he was owed for unused vacation time during his employment in 2013 and 2014, and that he did not receive a response.  But the Complaint does not allege facts to show that the failure to pay was in any way connected to Plaintiff's complaints of discrimination or "would not have occurred in the absence of the retaliatory motive."  *Id.* at 91. Accordingly, the Title VII retaliation claim is dismissed.  *See, e.g., Shukla*, 2020 WL 3181785, at \*12 (dismissing retaliation claim where the plaintiff "does not allege any facts regarding the circumstances of such a complaint, including when it was made . . . and does not allege any facts from which it may be inferred that [defendant] acted with a retaliatory motive").

### 3.   Title VII Hostile Work Environment Claim

"To establish a hostile work environment under Title VII . . . a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Littlejohn v. City of New York*, 795 F.3d 297, 320-21 (2d Cir. 2015).

> This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive.  The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.  In determining whether a plaintiff suffered a hostile work environment, we must consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Id.* at 321.  Here, the Complaint does not plausibly allege a hostile work environment.

During the eight-day period of employment in 2017, the Complaint alleges that "some" of Plaintiff's co-workers called him "Chino" and that others, including his supervisors, said his name with a "sarcastic" or "belittling" tone.  The Complaint also alleges sporadic undesirable work assignments, as well as assignments to teams and team members that were not his preference.  These allegations are insufficient to find that the "workplace is permeated with discriminatory intimidation, ridicule, and insult."  *Id.* at 320-21.  The alleged conduct was sporadic rather than consistent, was not "physically threatening or humiliating" and did not "unreasonably interfere[]" with Plaintiff's work performance.  *Id.*  Accordingly, the Title VII hostile work environment is dismissed.  *See id.* (affirming dismissal of hostile work environment claim where employer made negative statements about plaintiff, was impatient and used harsh tones with plaintiff, distanced herself and declined to meet with plaintiff, required plaintiff to

recreate work, wrongfully reprimanded plaintiff, increased plaintiff's schedule, and was sarcastic to plaintiff); *Aulicino v. New York City Dep't of Homeless Servs.*, 580 F.3d 73, 83 (2d Cir. 2009) ("For racist comments, slurs, and jokes to constitute a hostile work environment, however, there must be more than a few isolated incidents of racial enmity." (quotation marks omitted)); *Martin*, 2018 WL 6510805, at *12 (observing that "isolated and sporadic incidents" are "generally insufficient to establish a hostile work environment claim.").

## IV.    SUPPLEMENTAL JURISDICTION

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (quotation marks omitted); *accord Woolf v. Bloomberg L.P.*, No. 16 Civ. 6953, 2019 WL 1046656, at *21 (S.D.N.Y. Mar. 5, 2019), *aff'd sub nom. Woolf v. Strada*, 949 F.3d 89 (2d Cir. 2020), and *aff'd sub nom. Woolf v. Strada*, 792 F. App'x 143 (2d Cir. 2020).  Here, these factors do not compel the exercise of supplemental jurisdiction because the case remains in a relatively early stage of proceedings, no motions on the merits have been decided, and the "interests of comity militate[] in favor of remand because the case [is] predominantly a matter of state law." *Chapman v. Crane Co.*, 694 F. App'x 825, 829 (2d Cir. 2017) (summary order) (affirming remand of personal injury case where District Court declined to exercise supplemental jurisdiction after "effectively excis[ing] any claim on which a government-contractor defense could be premised and thereby extinguish[ing] the basis on which this action was originally removed" (alterations in original)).  Because the federal claims are dismissed, the Court declines to exercise

14

supplemental jurisdiction over the state law claims.  *See Kolari v. N. Y. Presbyterian Hosp.,* 455 F.3d 118, 123 (2d Cir. 2006) (reversing district court decision to retain supplemental jurisdiction over state law claims after dismissing federal claim, citing "the absence of a clearly articulated federal interest").

## V.     LEAVE TO REPLEAD

Leave to amend a complaint should be freely given "when justice so requires." Fed R. Civ. P. 15(a)(2).  If Plaintiff has additional facts that he believes would sustain a Title VII claim consistent with this Opinion, Plaintiff may file a letter asking to replead and attach a proposed amended complaint, but must do so by September 1, 2020.  Failure to file the letter with a proposed amended complaint will result in dismissal of the case, without prejudice to re-filing the state law claims in state court.

## VI.    CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss the Title VII claim is GRANTED.  If Plaintiff wishes to replead, he shall seek leave by letter as set forth above by **September 1, 2020**.

The Clerk of Court is respectfully directed to close the motion at Docket No. 27, and to mail a copy of this Opinion and Order to pro se Plaintiff.

Dated: August 11, 2020
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

15